# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JORDAN M. HOOGE,<br><br>    Plaintiff<br><br>v.<br><br>L. MICHELLE SUGERMAN, et al.,<br><br>    Defendants | Case No.: 2:25-cv-00592-APG-NJK<br><br>**Order (1) Transferring Case and (2) Denying Defendants' Motion to Supplement as Moot**<br><br>[ECF Nos. 15, 34] |

Jordan Hooge is a commercial airline pilot. In May 2023, the Federal Aviation Administration (FAA) notified Hooge that there was a discrepancy with the medical certification he is required to maintain as a commercial pilot because of his disability rating from his military service. ECF No. 1 at 2-3. The discrepancy required Hooge to see his Aviation Medical Examiner (AME), who cleared him to continue flying and sent the necessary paperwork to the FAA in June 2023. ECF Nos. 1 at 3; 18-1 at 2. Neither the FAA nor Hooge's AME mentioned the necessity of a neuropsychological evaluation. ECF No. 1 at 3.

However, Hooge became nervous when he did not hear back from the FAA because his medical certification was set to expire at the end of November 2023.[1] ECF No. 18-1 at 2. His AME assured Hooge he was fine but suggested he contact Dr. L. Michelle Sugerman if he wanted additional reassurance that his FAA certification would be approved. ECF Nos. 1 at 3; 18-1 at 2. Hooge did, and after several emails, phone calls, and a non-refundable $4,800 payment, he scheduled an appointment with Sugerman at the Steinmann Institute. ECF Nos. 1 at 3; 18-1 at 3. Hooge alleges Sugerman falsely claimed her testing was mandatory and that "she

---

[1] The exact date is unclear as Hooge also claimed his FAA medical certification would expire in December 2023. ECF No. 1 at 3.

had '100% accuracy' in securing certifications." ECF No. 1 at 3.  Sugerman sent Hooge multiple documents to complete before his appointment. ECF No. 18-1 at 3.  After traveling to Salt Lake City from Las Vegas to see Sugerman, Hooge was presented with an additional contract that he signed the morning of his appointment. ECF Nos. 1 at 3-4; 18-1 at 3-4.  This "aviation services contract" contained a forum selection clause, which states:

> The terms and conditions contained within this agreement shall be governed by the laws of the State of Utah and shall be construed and interpreted in accordance with those laws.  Any action or proceeding brought by either party which is based upon or derived from, or in any way related to this agreement, shall be brought in a court of competent jurisdiction within the state of Utah.  The parties hereto consent to their personal jurisdiction of said court.

ECF No. 15-1 at 4.  Sugerman performed her services and sent her report to the FAA. ECF No. 1 at 4-5.

Ultimately, the FAA revoked Hooge's medical certification. *Id.* at 5.  After this, Hooge tried for months to obtain his records from Sugerman, but she refused to provide them directly to him. *Id.* at 6; ECF Nos. 18-1 at 5; 18-2 at 3.  Sugerman based her refusal on an agreement Hooge signed, which stated that her report would be sent to the FAA and Hooge's AME. ECF No. 18-2 at 2-3.  The agreement also stated that "[a] copy of the report from the Steinmann Institute will not be given to the airman.  To obtain a copy of this report, a formal request should be submitted directly to the [FAA]." *Id.*

Hooge sued Dr. Sugerman and the Steinmann Institute, LLC, asserting claims for medical malpractice, fraud, tortious interference with contractual relations, and defamation.  Sugerman moves to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), or alternatively to transfer venue under 28 U.S.C. § 1406. ECF No. 15.  Hooge opposes dismissal and transfer. ECF No. 18.  Almost five months after filing her motion to dismiss for improper

venue, Sugerman moved for leave to supplement that motion, arguing lack of personal jurisdiction. ECF No. 34. Hooge opposes that motion as well. ECF No. 35.

I grant the motion to transfer because Hooge signed a valid and enforceable mandatory forum selection clause, making Utah the exclusive jurisdiction for this case. As I am transferring this case to the United States District Court for the District of Utah, I deny as moot Sugerman's motion to supplement for lack of personal jurisdiction.

**I. ANALYSIS**

Section 1406(a) and Rule 12(b)(3) permit dismissal or transfer only "when venue is 'wrong' or 'improper.'" *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). Whether venue is wrong or improper depends on whether the case satisfies federal venue laws, like 28 U.S.C. § 1391, irrespective of any forum selection clause. *Id.* at 55-56. Where venue is proper, the correct mechanism for enforcing a forum selection clause is 28 U.S.C. § 1404. *Id.* at 59-60. On a Rule 12(b)(3) motion, the plaintiff bears the burden of showing venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).

It is not clear whether § 1404 or § 1406 is the correct mechanism to address Sugerman's motion because the parties' briefs do not sufficiently address whether venue in Nevada is proper under § 1391. In his complaint, Hooge alleges venue in Nevada is proper under § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claims . . . occurred in Las Vegas, Nevada." ECF No. 1 at 2. Sugerman challenges this, arguing that "the critical events giving rise to the claims—the neuropsychological evaluation, test administration, and preparation of the FAA report—occurred in Utah." ECF No. 15 at 4. However, much of her analysis for why venue in this district is improper is incorrect under *Atlantic Marine*. *Id.* at 4-5. For instance, she

claims (1) "[v]enue is improper in the District of Nevada because the Contract's mandatory forum selection clause designates Utah as the exclusive forum for disputes," (2) whether "venue is proper under 28 U.S.C. § 1391(b)(2) . . . is irrelevant when a mandatory forum selection clause controls," and (3) the "forum selection clause overrides any statutory venue analysis." *Id.* at 4. These assertions are wrong under *Atlantic Marine*, and the only authority Sugerman cites came over two decades before the Supreme Court's ruling in that case. 571 U.S. at 55-57 ("Whether venue is 'wrong' or 'improper' depends exclusively on whether the court . . . satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause."); *see* ECF No. 15 at 4 (citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75 (9th Cir. 1987)). In response, Hooge does not address his burden to show venue is proper in Nevada under § 1391. Given the parties' lack of analysis on whether venue in Nevada is proper, I will address both § 1404 and § 1406 for the purposes of this order.

Under a Rule 12(b)(3) motion, the pleadings are not accepted as true as would be required under a Rule 12(b)(6) analysis, and I may consider facts outside the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The same is true for motions to transfer under § 1404. *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014). "[I]n the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party . . . ." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004). If I grant the motion because venue is improper, I may dismiss, or, in the interest of justice, transfer the case to a forum where venue is proper under 28 U.S.C. § 1406(a).

Similarly, § 1404 permits me, "in the interest of justice," to "transfer any civil action to any other district or division where it might have been brought." Because enforcing a bargained-for forum selection clause protects the parties' "legitimate expectations and furthers vital interests of the justice system," a valid forum selection clause is "given controlling weight in all but the most exceptional cases." *Atl. Marine*, 571 U.S. at 63 (simplified). When deciding a § 1404(a) venue transfer request not involving a forum selection clause, a district court "must evaluate both the convenience of the parties and various public-interest considerations . . . and decide whether, on balance, a transfer would serve the convenience of parties and witnesses and otherwise promote the interest of justice." *Id.* at 62-63 (quotation omitted). A valid forum selection clause requires adjusting the § 1404(a) analysis in three ways. First, "the plaintiff's choice of forum merits no weight." *Id.* at 63. Second, "[a] court . . . must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Id.* at 64. Third, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." *Id.*

### A. The forum selection clause is valid and enforceable.

In diversity cases, federal law governs both the enforcement and interpretation of contractual forum selection clauses. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). A contractual forum selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 10 (1972)) (quotation omitted). "The party challenging [a forum selection] clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was

5

invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140 (quoting *Bremen*, 407 U.S. at 15).

Sugerman has presented a prima facie valid forum selection clause contained in the aviation services contract Hooge signed. ECF No. 15-1 at 4. Hooge challenges the aviation services contract and its mandatory forum selection clause for overreaching, substantive unconscionability, duress, and waiver. His overreaching and substantive unconscionability arguments specifically challenge the forum selection clause, and thus arise under federal law governing the enforceability of forum selection clauses. *See Manetti–Farrow*, 858 F.2d at 513. A forum selection clause is not enforceable if: (1) "inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "'enforcement would contravene a strong public policy of the forum in which suit is brought.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting *Bremen*, 407 U.S. at 12-13, 15, 18).

Hooge challenges the entire aviation services contract for duress and waiver, which are generally applicable contract defenses arising under state law. *Cir. City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) ("[G]eneral contract defenses such as . . . duress . . . [are] grounded in state contract law."); *Mounteer Enters., Inc. v. Homeowners Ass'n for the Colony at White Pine Canyon*, 422 P.3d 809, 812-13 (Utah 2018) (applying state law to a claim that a party waived a contractual provision). "Federal courts sitting in diversity must apply the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quotation omitted). "It is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract." *Ferdie*

6

*Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Invs.*, 603 P.2d 270, 273 (Nev. 1979). The parties act in good faith if the "situs fixed by the agreement" has a "substantial relation with the transaction." *Id.* I then determine whether the parties' chosen law offends a "public policy of the forum" state. *Id.*

The aviation services contract is expressly governed by Utah law. ECF No. 15-1 at 4. The parties' selection of Utah law was in good faith because the agreement has a substantial relation to Utah. And Hooge does not identify any Nevada fundamental policy that Utah law offends. Hooge notes several aspects of Utah law that are disadvantageous for him, but he does not specifically challenge the agreement's choice of law provision, and he cites Utah law throughout his brief. ECF No. 18 at 6, 9, 12, 13. Therefore, I apply Utah law to Hooge's duress and waiver arguments.

### 1. The forum selection clause was not born from overreaching.

Hooge contends the forum selection clause is a product of overreaching because it was presented to him only after a verbal agreement and he traveled to Utah, the contract was adhesive, and he risked losing his non-refundable payment if he did not agree to it. Sugerman responds there was no unfair surprise or lopsided bargaining.

Overreaching requires more than "simply alleging that one was duped into signing the contract." *Richards*, 135 F.3d at 1297. Rather, a party seeking to invalidate a forum selection clause "must show that the inclusion of that clause in the contract was the product of fraud or coercion." *Id.* (simplified); *see also Murphy*, 362 F.3d at 1141 (characterizing overreaching as a "potential ground short of fraud"). "[I]n the light of present-day commercial realities . . . [a] forum clause should control absent a strong showing that it should be set aside." *Bremen*, 407 U.S. at 15.

The forum selection clause in the aviation services contract is not the product of overreaching. Although Hooge may have felt pressure to agree to the aviation services contract because of his non-refundable payment and travel to Utah, in the absence of evidence indicating that Sugerman engaged in some fraudulent or nefarious conduct with regard to the forum selection clause, Hooge has not met his "heavy burden" to show overreaching. *Bremen*, 407 U.S. at 17.

Hooge relies on *Corna v. American Hawaii Cruises, Inc.*, 794 F. Supp. 1005, 1008 (D. Haw. 1992), for the assertion that a forum selection clause must be "communicat[ed] at a time and under circumstances that allow for genuine, uncoerced assent without substantial penalty." ECF No. 18 at 10. The *Corna* court applied a test that "refine[d] the analysis of . . . *Bremen* to account for the realities of form passage contracts." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991). *Corna* did not analyze overreaching or any of the other *Bremen* forum selection clause defenses. 794 F. Supp. at 1007-08. Rather, it "applie[d] a two-prong test to determine the enforceability of a forum selection clause," the first prong being whether the terms were "reasonably communicated." *Id.* at 1008 (quotation omitted). The second prong is whether the forum selection clause is "fundamentally fair." *Id.* (quotation omitted). Hooge offers no authority to extend the reasonably communicated and fundamental fairness tests applicable to passenger ticket contracts to the traditional *Bremen* analysis. Because *Corna* does not analyze overreaching, I do not extend its analysis to the facts here.[2]

---

[2] Other district courts have rejected *Corna* and held that a risk of losing payment will not invalidate a forum selection clause on a passenger ticket contract. *See Lurie v. Norwegian Cruise Lines, Ltd.*, 305 F. Supp. 2d 352, 361 (S.D.N.Y. 2004) (describing a "majority of courts" as having rejected the view that it is "fundamentally unfair" for a cruise line that sells non-refundable tickets or charges a substantial fee for cancellations to send passengers forum selection clauses in passenger ticket contracts).

8

In *Carnival*, the Supreme Court enforced a forum selection clause contained in a cruise line's passenger ticket despite the non-negotiable nature of the clause and the parties' difference in bargaining power. 499 U.S. at 587, 595. *Carnival* applied the same test to passenger ticket contracts but, unlike *Corna*, also found "no evidence" of "fraud or overreaching." *Id.* at 595. The Supreme Court rejected the argument that "a nonnegotiated forum-selection clause in a form ticket contract is never enforceable simply because it is not the subject of bargaining." *Id.* at 593. Thus, Hooge's contention that the forum selection clause is the product of overreaching because it was adhesive fails. And to the extent Hooge argues overreaching because of unequal bargaining power or because he had less experience than Sugerman in these matters, those arguments must also necessarily fail because "a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause." *Murphy*, 362 F.3d at 1141 (concluding that allegations of power differential and non-negotiability are insufficient to overcome the "strong presumption in favor of enforcing forum selection clauses").

Hooge has failed to show overreaching by arguing that the non-refundable payment makes the subsequently signed forum selection clause unenforceable. Hooge knew the payment was non-refundable when he paid it, had exchanged multiple forms with Sugerman (none of which included the forum selection clause), and "inferred that the negotiations were complete." ECF No. 18-1 at 3. These facts fail to meet his heavy burden to overcome a presumptively valid forum selection clause. *Bremen*, 407 U.S. at 10, 15. He does not describe what the complete negotiations he inferred were, nor does he allege having objected to the forum selection clause the morning of his appointment. The forum selection clause is unambiguous and plainly indicates that Utah is the designated forum, which is reasonable under the circumstances given the services were performed there. The clause is set in the same size font as the remainder of the

agreement, is contained under a bold heading stating "**JURISDICTION AND VENUE,**" and is part of an agreement that is only five pages long. ECF No. 15-1 at 4. Hooge signed directly below the forum selection clause and at the end of the agreement. *Id.* at 4, 6. Under these circumstances, the forum selection clause Hooge signed was not a product of overreaching.

        2. <u>Substantive unconscionability brought under state law is not a valid defense to enforcement of a forum selection clause.</u>

Hooge's second argument specific to the forum selection clause is that it is substantively unconscionable because it is oppressively one-sided, especially in the context of a patient seeking mental health services, and it makes it significantly more difficult and expensive for him to litigate his claims. Sugerman responds that the forum selection clause is not oppressive, it is not unduly burdensome for Hooge to litigate in Utah, and there is no statute prohibiting forum selection clauses in medical service contracts.

Federal law governs the enforcement of forum selection clauses, and substantive unconscionability is not one of the defenses to a forum selection clause that federal law recognizes. *Manetti–Farrow*, 858 F.2d at 513; *see Bremen*, 407 U.S. at 12-13, 15, 18 (identifying the three reasons a forum selection clause may be "unreasonable"). Substantive unconscionability is a product of state law and thus may be a defense to enforcement of the contract as a whole, but Hooge makes no argument to extend its applicability to enforcement of a forum selection clause specifically. *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) ("[U]nconscionability is governed by state law . . . ."); *Manetti-Farrow*, 858 F.2d at 513 (holding that federal law governs enforcement and interpretation of forum selection clauses). Thus, Hooge's contention that the forum selection clause is substantively unconscionable fails.

Nor has Hooge shown that he would effectively be deprived of his day in court were the clause enforced or that enforcement would contravene a strong public policy of Nevada. Utah is a legitimate venue, it is geographically close, and Hooge has demonstrated the ability to travel there by seeking services in that state. Additionally, most of the events at issue here occurred in Utah. Hooge identifies two Nevada statutes that prohibit forum selection clauses in consumer financing and construction agreements. ECF No. 18 at 12. Neither of these applies here, nor has Hooge identified any other Nevada public policy that would be undermined by enforcing the forum selection clause. Hooge has failed to show that enforcement of the forum selection clause in the aviation services contract would be unreasonable under *Bremen*, and I reject his substantive unconscionability argument.

### 3. Duress does not warrant invalidating the aviation services contract.

Hooge argues the entire aviation services contract he signed is a product of duress because he was first presented with the contract on the morning of his appointment after paying a non-refundable fee and traveling to Utah. Sugerman argues there was no improper threat creating duress and, even if there was, Hooge had a reasonable alternative to signing the agreement.

Under Utah law, a contract may be void for duress if there was an "'improper threat by the other party that leaves the victim no reasonable alternative.'" *Andreini v. Hultgren*, 860 P.2d 916, 921 (Utah 1993) (quoting Restatement (Second) of Contracts § 175(1) (1979)). A threat is improper if "the resulting exchange is not on fair terms, and . . . the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat." Restatement (Second) of Contracts § 176(2) (1981). It is not enough that there was an improper threat, the threat must also leave the victim with "no reasonable

alternative." A legal remedy may be a reasonable alternative, but "the seizure of property, the use of oppressive tactics, or the possibility of emotional consequences" may create no reasonable alternative. *Id.* The threatened denial of needed goods or services may create no reasonable alternative if there is no availability on the market for similar goods or services, but "a refusal to pay money is not duress, absent a showing of peculiar necessity," because "alternative sources of funds are ordinarily available." *Id.*

In *Andreini*, the plaintiff underwent a surgery that resulted in numbing and noticeable atrophy in both his hands. 860 P.2d at 917. Weeks later, the surgeon suggested a second surgery to fix Andreini's hands and stated he would ask the hospital to waive its charges for the corrective surgery. *Id.* A few days later, Andreini arrived at the hospital, was placed in a gown, shaved, and prepared for surgery. *Id.* at 918, 922. About an hour before the surgery was set to begin, the hospital presented Andreini with a release form and asked him to sign it, but he refused. *Id.* at 918. The hospital employee then had Andreini talk to the surgeon, who said he would not perform the surgery unless Andreini signed the release. *Id.* "Although visibly upset, Andreini signed the form and underwent the operation." *Id.*

The court in *Andreini* held there was sufficient evidence of an improper threat to deny summary judgment because the resulting exchange was not on fair terms when the surgeon had promised that the corrective surgery would fully restore the use of Andreini's hands. *Id.* at 922. Similarly, Hooge's exchange with Sugerman was not on fair terms because she claimed her testing "was a mandatory FAA requirement" and that "she had '100% accuracy' in securing certifications." ECF No. 1 at 3. Sugerman's promise of necessity and effectiveness, as well as waiting to present Hooge with the aviation services contract until he arrived in Utah, significantly increased the effectiveness of her threat not to see Hooge unless he signed the

agreement. *See Andreini*, 860 P.2d at 922 (finding sufficient evidence to avoid summary judgment as to whether the surgeon had engaged in unfair dealing that increased the impropriety of the threat not to perform the surgery unless Andreini signed the release because the surgeon promised Andreini that "the corrective surgery would result in his full recovery while neglecting to inform him until just prior to surgery that he would have to waive any claims"). Thus, Hooge has established the improper threat element of duress.

However, Hooge fails to establish he was faced with no reasonable alternative but to sign the aviation services contract. He argues he had no choice but to sign the contract because he would have lost his non-refundable payment, sunk his travel costs, and risked his FAA certification. ECF No. 18 at 7. But pecuniary loss, alone, is typically insufficient. Restatement (Second) of Contracts § 175 cmt. b. Hooge could have sought to reschedule his appointment to give himself time to review the documents or he could have refused to sign the contract and sought legal recourse for his financial loss. He has demonstrated his ability to do so through this lawsuit. Hooge may have felt pressure to sign the contract because of his soon-to-expire FAA certification, but this looming deadline was not Sugerman's doing. And there is no indication that Hooge could not have sought an evaluation from another neuropsychologist. *See id.* ("In the case of a threatened denial of needed goods or services, the availability on the market of similar goods or services may afford a reasonable means of avoiding the threat."). This case is fundamentally different from *Andreini* where the plaintiff "was aware that his hands were getting progressively worse each day" and "immediate corrective surgery was indeed necessary to prevent further irreversible damage," so a jury could have found he had no reasonable alternative but to agree to the release and undergo surgery. 860 P.2d at 923. Because Hooge had reasonable

alternatives other than immediately signing the aviation services contract, I reject his duress argument.

####  4.  Sugerman has not waived the aviation services contract.

Hooge's final argument is that Sugerman waived enforcement of the aviation services contract by denying the existence of a physician-patient relationship with him.  Sugerman counters that she only denied the existence of a physician-patient relationship, not a contractual relationship, and, in any event, Hooge did not detrimentally rely on her representation.

Waiver under Utah law requires an "intentional relinquishment of a known right." *Mounteer*, 422 P.3d at 812 (quotation omitted).  "Courts do not lightly consider a contract provision waived, however." *Id.*  "[T]o constitute waiver, there must be an existing right, benefit or advantage, a knowledge of its existence, and an intention to relinquish it." *Neeshan v. Ravonsheed*, 561 P.3d 708, 711 (Utah Ct. App. 2024) (quotation omitted).

Sugerman has not waived her relationship with Hooge under the aviation services contract.  Though she has denied the existence of a physician-patient relationship with Hooge, she has not denied that she entered into a contractual relationship with him. ECF No. 18-4. Granted, the aviation services contract uses the word "patient" several times. ECF No. 15-1 at 3, 5, 6.  But it also describes Hooge as a "client" and next to each of his signature lines it states, "**CLIENT AGREEMENT SIGNATURE.**" *Id.* at 2-6.  The contract states it is an agreement to perform a neuropsychological "examination" or "evaluation" after "referral from the [FAA], [Hooge's AME] or another physician." *Id.* at 2.[3]  Sugerman expressly affirmed having evaluated Hooge in the sentence after she denied a physician-patient relationship. ECF No. 18-4 at 1 ("Dr.

---

[3] The additional contract Hooge signed states that Sugerman's evaluation "is an aeromedical neuropsychological examination, and expressly does not include any mental treatment by the examiner." ECF No. 18-2 at 2.

Sugerman was contracted by the Federal Aviation Administration ('FAA') for the express and singular purpose of conducting an evaluation to address discrepancies in Petitioner's benefits documents."). Thus, Sugerman has not expressly waived her contractual rights under the aviation services agreement.

Sugerman's refusal to provide Hooge his medical records does not waive the contract either. Even if the aviation services contract required Sugerman to directly provide Hooge his records, he has not explained why such a breach would justify waiving the entire contract. In any event, the agreement does not create such a duty, stating only that Hooge is "entitled to receive a copy of [his] records." *Id.* at 5. The contract clarifies "it is recommended that [Hooge] review them in [Sugerman's] presence so that [they] can discuss the contents." *Id.* Sugerman did not refuse Hooge access to his records but required he obtain them from his AME or the FAA. ECF No. 18-2 at 3. Hooge agreed to these terms, including that the records would not be given directly to him. *Id.* at 2.

Hooge also argues that judicial estoppel applies here. As he recognizes, this doctrine applies when a party "chang[es] its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." ECF No. 18 at 14 (quoting *Fluence Energy, LLC v. M/V BBC Finland*, 726 F. Supp. 3d 1086, 1120 (S.D. Cal. 2024)). Without citing any authority, Hooge contends a Utah Division of Occupational and Professional Licensing (DOPL) proceeding is a "prior proceeding" on which he can base his judicial estoppel defense.[4] ECF No. 18 at 15 (quotation omitted). Regardless, Hooge's judicial estoppel argument

---

[4] I am aware of the defendants' pending motion for sanctions based on Hooge disclosing DOPL proceedings. ECF No. 57. Hooge opposes this motion. ECF No. 64. Sugerman did not raise this issue in her reply to her motion to dismiss for improper venue and, in fact, references her objection to a subpoena from the DOPL proceeding. ECF No. 26 at 7. Without expressing any view on the pending motion for sanctions, I rely on the same subpoena objection Sugerman

15

fails for the same reason as his waiver argument: by denying only a physician-patient relationship and not a contractual relationship, Sugerman has not taken a position in these proceedings that is inconsistent with an earlier position. Because Sugerman has neither intentionally relinquished a known right under the aviation services contract nor taken an inconsistent position in prior proceedings, I deny Hooge's waiver and estoppel arguments and need not address any detrimental reliance.

### B. I transfer this case to the District of Utah.

Sugerman has shown the existence of a valid forum selection clause. The forum selection clause is enforceable because Hooge has not met his burden to show it is unreasonable or unjust to enforce it under the circumstances. The forum selection clause makes Utah the exclusive venue, and the interest of justice under § 1406(a) supports transferring this case to the United States District Court for the District of Utah where venue is proper.

I also find that the interest of justice supports transferring this case under § 1404(a). The private interest factors weigh in favor of Utah because of the forum selection clause. *Atl. Marine*, 571 U.S. at 64. The public interest factors may include: (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized controversies decided at home"; and (3) "the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (quotation omitted). "The Court must also give some weight to the plaintiffs' choice of forum." *Id.* The first two factors are neutral, although there is a small interest in having this controversy decided in Utah where Sugerman evaluated Hooge and issued

---

references and note it is not the DOPL board's "results, opinions, findings, [or] determinations." Utah Code Ann. § 78B-3-419(1).

her report to the FAA.  The third factor weighs in favor of Utah as the preferred forum.  Overall, the § 1404(a) factors weigh in favor of Utah as the venue for this dispute.

Therefore, I grant Sugerman's motion to transfer venue.  As I am transferring this case to Utah, I deny Sugerman's supplemental motion to dismiss for lack of personal jurisdiction as moot.  I do not address any of the other pending motions.

## II. CONCLUSION

I THEREFORE ORDER that defendants' motion to transfer **(ECF No. 15) is GRANTED.**  The clerk of court is instructed to transfer this action to the Central Division of the United States District Court for the District of Utah.

I FURTHER ORDER that defendants' motion to supplement **(ECF No. 34) is DENIED.**

I FURTHER ORDER the clerk of court to close this case.

DATED this 3rd day of March, 2026.

ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE