UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JORDAN MINK HOOGE,<br><br>          Plaintiff,<br><br>v.<br><br>L. MICHELLE SUGERMAN, PSY.D; and<br>STEINMAN INSTITUTE, LLC,<br><br>          Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:26-cv-00180<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |

Now before the court are Defendants L. Michelle Sugerman and Steinman Institute, LLC's

Motion for Summary Judgment,[1] Defendants' Motion for Sanctions,[2] Plaintiff Jordan M.

Hooge's Motion for Partial Summary Judgment,[3] and Hooge's Motion for Sanctions.[4]  For the

reasons stated below, the court grants Defendants' Motion for Summary Judgment, denies

Hooge's Motion for Summary Judgment, and denies both Motions for Sanctions as moot.

**BACKGROUND[5]**

Hooge is a commercial pilot based in Las Vegas, Nevada.[6]  Prior to becoming a

commercial pilot, Hooge served as a military pilot and experienced a flight control malfunction

---

[1] Dkt. 58, *Defendants' Motion to Dismiss and Motion for Summary Judgment* (*Defendants' Motion for Summary Judgment*).

[2] Dkt. 57, *Defendants' Motion for Sanctions.*

[3] Dkt. 59, *Plaintiff's Motion for Partial Summary Judgment* (*Hooge's Motion for Summary Judgment*).

[4] Dkt. 82, *Plaintiff's Motion for Sanctions Under Fed. R. Civ. P. 37(b)(2) and (37)(e)* (*Hooge's Motion for Sanctions*).

[5] The facts are taken from the parties' briefs and exhibits.

[6] Dkt. 58-2, *Deposition of Jordan Hooge* (*Defendants' Hooge Deposition*) at 87:8–12.  Both parties submitted different excerpts of deposition transcripts for multiple individuals.  The court distinguishes the transcripts by party where necessary.

1

in 2017.[7]   After leaving the military in 2019, Hooge received benefits from the Department of Veterans Affairs (VA), in part due to post-traumatic stress disorder (PTSD) resulting from the flight malfunction incident.[8]   Hooge received VA benefits from September 1, 2019, through December 22, 2025.[9]   Hooge denied having any mental disorders on his 2019, 2020, 2021, and 2022 applications for VA benefits.[10]

To be certified as a commercial pilot, the Federal Aviation Administration (FAA) requires a medical certificate.[11]   An FAA medical certificate applicant must indicate whether he or she has "been diagnosed with, had, or [presently has]" mental disorders "of any sort."[12]   Hooge applied for an FAA medical certificate in 2019 and denied having any mental disorders on his application.[13]

On May 28, 2023, Hooge received a letter from the FAA stating it was undergoing a Special Project to ensure the information it had on file for Airman Medical Certificate holders was

---

[7] *Defendants' Motion for Summary Judgment* ¶ 1; *see generally* Dkt. 62, *Plaintiff's Response to Defendants' Motion for Summary Judgment* (*Defendants' Motion for Summary Judgment Opposition*) (not disputing *Defendants' Motion for Summary Judgment* ¶ 1).

[8] *Defendants' Motion for Summary Judgment* ¶ 8; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 8); Dkt. 58-5, *VA Benefits Decision Letter*; *Defendants' Hooge Deposition* at 67:24–70:8; Dkt. 58-3, *Statement in Support of Claim*.

[9] *Defendants' Motion for Summary Judgment* ¶ 8; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 8).

[10] *Defendants' Motion for Summary Judgment* ¶¶ 14–17; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶¶ 14–17).

[11] *Defendants' Motion for Summary Judgment* ¶¶ 9–10; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶¶ 9–10); Dkt. 58-6, *2019 Medical Certificate Application*; Dkt. 58-10, *Deposition of Rulon D. Owen, DO* (*Defendants' Owen Deposition*) at 11:14–17:18, 30:12–24, 40:1–14; Dkt. 58-23, *Deposition of Rocky Jedick, M.D.* (*Defendants' Jedick Deposition*) at 30:3–7 (stating Hooge worked for Frontier Airlines as a commercial airline pilot).

[12] *Defendants' Motion for Summary Judgment* ¶¶ 11; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Motion for Summary Judgment* ¶ 11).

[13] *Defendants' Motion for Summary Judgment* ¶ 14; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 14); *see also 2019 Medical Certificate Application* at 3.

accurate and the FAA determined Hooge's file contained potential discrepancies.[14]  To maintain his medical certificate, the FAA required Hooge to submit "all reasonably known medical information," including VA disability benefits, file a new medical application, and schedule an appointment with an Aviation Medical Examiner (AME).[15]  The FAA letter did not mandate any specific tests or assessments to satisfy the certificate requirements.[16]

In June 2023, Hooge contacted AME Rulon Owen for an appointment.[17]  With Owen's help, Hooge submitted the required FAA application.[18]  Although Owen was an AME for the FAA, he was not familiar with the Special Project and deferred the decision to issue a medical certificate to the FAA.[19]  If an AME defers a decision to the FAA, an FAA medical panel reviews the application together with any tests and test data to determine whether to issue a medical certificate.[20]

---

[14] *Defendants' Motion for Summary Judgment* ¶¶ 19–20; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶¶ 19–20); Dkt. 59-1, *FAA May 28, 2023 Letter* (*FAA May 2023 Letter*); *Defendants' Owen Deposition* at 34:23–36:17; *Defendants' Jedick Deposition* at 27:11–29:11.

[15] *FAA May 2023 Letter*.

[16] *See id*.

[17]  *Defendants' Motion for Summary Judgment* ¶ 22; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 22); *see also Defendants' Hooge Deposition* at 86:17–87:7, 107:1–108:15.

[18] *Defendants' Motion for Summary Judgment* ¶ 22; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 22); *see also* Dkt. 58-12, *MedXPress Application Submittal Process for Exam*.

[19] *Defendants' Motion for Summary Judgment* ¶ 23; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 23); *see also* Dkt. 62-2. *Douglas Owen, DO Medical Records* (*Owen Medical Records*) at 5; *Defendants' Owen Deposition* at, 75:15–25; Dkt. 59-5, *Deposition of Jordan Hooge* (*Plaintiff's Hooge Deposition*) at 113:16–23.

[20] *Defendants' Motion for Summary Judgment* ¶ 36; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 36); *see also Defendants' Jedick Deposition* at 31:23–33:9, 77:7–78:1; *Defendants' Owen Deposition* at 60:1–23.  Hooge contends that to understand the FAA medical panel as "an independent third party" "misunderstands the administrative state."  *Defendants' Motion for Summary Judgment Opposition* at 16.  Although Hooge argues the role the medical panel played in this case, he acknowledges the FAA medical panel reviews the medical certificate applications.  *Id.* at 16–17; *see also Hooge's Motion for Summary Judgment* ¶ 2 ("Upon deferral, the FAA Aerospace Medical Certification Division (AMCD) in Oklahoma will review the file and issue a letter requiring a specific battery of tests.").

Owen testified the FAA sometimes requires fairly complicated testing,[21] and Owen told Hooge he could contact Defendant Michelle Sugerman for additional assistance.[22] Sugerman, owner of the Steinman Institute, is a neuropsychologist with experience doing assessments for the FAA.[23] Sugerman is not an FAA employee and does not have the authority to issue or revoke an airman's medical certificate.[24]

Hooge contacted Sugerman and traveled to Salt Lake City to undergo testing at the Steinman Institute.[25] While at the Steinman Institute, Hooge also signed an "Aviation Contract."[26] The Aviation Contract contained the following provisions:

> **AVIATION NEUROPSYCHOLOGICAL SERVICES**
> Upon receiving a referral from the [FAA], your [AME] or another physician, an initial appointment may occur followed by several hours of formal computerized session[s], behavioral, psychological, and face-to-face cognitive and neuropsychological examination. . . .
>
> The services you have contracted for are an aviation examination with interpretive report with recommendations and possible treatment plan. Any diagnosis provided is based on medical history, collaborative data and assessment findings. While an airman or flight company may be concerned about a specific diagnosis and such concerns may be taken into consideration, ultimately performance in the context of history will determine diagnosis. . . .

---

[21] *Defendants' Owen Deposition* at 37:5–16, 40:5–11.

[22] *Defendants' Motion for Summary Judgment* ¶¶ 23; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 23); *see also Defendants' Hooge Deposition* at 108:17–109:3, 118:2–6; *Defendants' Owen Deposition* at 37:11–16.

[23] Dkt. 58-14, *Deposition of L. Michelle Sugerman* (*Defendants' Sugerman Deposition*) at 103:7–15; Dkt. 59–7, *Deposition of L. Michelle Sugerman* (*Plaintiffs Sugerman Deposition*) at 5:24–7:24; *Defendants' Owen Deposition* at 37:5–10.

[24] *Defendants' Motion for Summary Judgment* ¶ 37; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 37).

[25] *Defendants' Motion for Summary Judgment* ¶ 24; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 24); *Plaintiff's Hooge Deposition* at 119:4–120:15.

[26] *Defendants' Motion for Summary Judgment* ¶ 25; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 25); Dkt. 58-13, *L. Michelle Sugerman, Ph.D. Aviation Contract* (*Aviation Contract*).

**JURISDICTION AND VENUE**
The terms and conditions contained within this agreement shall be governed by the laws of the State of Utah and construed and interpreted in accordance with those laws.  Any action or proceeding brought by either party which is based upon or derived from, or in any way related to this agreement, shall be brought in a court of competent jurisdiction within the state of Utah.  The parties hereto consent to their personal jurisdiction of said court. . . .

**PROFESIONAL RECORDS**
The laws and standards of my profession require that I keep treatment records. You are entitled to receive a copy of your records, or I can prepare a summary for you instead.  Because these are professional records, they can be misinterpreted and/or upsetting to untrained readers.  If you wish to see your records, it is recommended that you review them in my presence so that we can discuss the contents.[27]

The Aviation Contract also provided that a client could request to repeat a procedure if Sugerman concluded the performance was "suboptimal."[28]

Sugerman administered several tests to Hooge based on his "self-reported symptoms, including memory loss, difficulty focusing, and irritability."[29]  Sugerman also requested a copy of Hooge's medical records from the VA to complete her report.[30]

On December 2, 2023, the FAA sent another letter to Hooge stating it was deferring his medical certificate application due to his history of PTSD.[31]  The FAA instructed Hooge to submit a complete copy of his medical records, a personal statement, a list of his current medications, and undergo a current evaluation by a psychiatrist or psychologist.[32]  The FAA also required copies of

---

[27] *Aviation Contract* at 2–5.

[28] *Id.* at 3.

[29] *Defendants' Motion for Summary Judgment* ¶ 27; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 27).

[30] *Defendants' Sugerman Deposition* at 176:1–15.

[31] *Defendants' Motion for Summary Judgment* ¶ 28; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 28); Dkt. 58-15, *Letter from Harriet Lester, M.D., Federal Aviation Administration Regional Flight Surgeon, to Jordan Hooge (Dec. 2, 2023)* (*FAA December 2023 Letter*).

[32] *FAA December 2023 Letter* at 1–2.

all PTSD screening tests he may have taken, including any psychological testing.[33]

Hooge met with Owen on December 27, 2023, and Owen administered the FAA's "PTSD Decision Tool."[34]  Owen determined that, based on his responses to the PTSD Decision Tool, Hooge "me[t] the standards for issuance of FAA airman certificate as requested."[35]

On February 3, 2024, Hooge received another letter from the FAA stating it was deferring his medical certificate until it had more information about Hooge's history of PTSD.[36] Meanwhile, Sugerman was still attempting to gather all of Hooge's VA records.[37]  Sugerman completed her report (the Report) and submitted it, along with the raw data, to the FAA on April 8, 2024 for its independent review.[38]

Among other things, Sugerman's Report included the following findings: (1) "[d]espite reporting a significant trauma history, the pattern of endorsement does not appear to satisfy DSM-IV-TR diagnostic criteria for PTSD," Hooge "did not endorse significant difficulties in . . . any of

---

[33] *Id.* at 2.

[34] *Defendants' Motion for Summary Judgment* ¶ 30; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 30).

[35] *Owen Medical Records* at 3.  Hooge later testified that he continued to experience PTSD symptoms.  *Defendants' Motion for Summary Judgment* ¶ 31; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 31).  Owen also testified that, based on that information, Hooge should have answered the PTSD Decision Tool questions differently.  *Defendants' Motion for Summary Judgment* ¶ 31; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 31); *see also Defendants' Owen Deposition* at 52:18–54:12.  In his Motion, Hooge states he was not experiencing PTSD in December 2023.  *See Hooge's Motion for Summary Judgment* at 15 ("[Hooge] had been asymptomatic for years and had never taken any medication for PTSD or depression.").  However, whether Hooge was still experiencing PTSD is not material for this Order.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

[36] Dkt. 58-18, *Letter from Harriet Lester, M.D., Federal Aviation Administration Regional Flight Surgeon, to Jordan Hooge (Feb. 3, 2024)* (*FAA February 2024 Letter*) at 2.

[37] *Defendants' Motion for Summary Judgment* ¶ 33; *Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 33); *See also Defendants' Sugerman Deposition* at 176:6–13; Dkt. 66-5, *The Steinman Institute Federal Aviation Administration Report* (*Report*) at 1 (stating Hooge's final records were received March 28, 2024).

[38] *Defendants' Motion for Summary Judgment* ¶ 36; *Defendants' Motion for Summary Judgment Opposition* (not disputing *Defendants' Motion for Summary Judgment* ¶ 36).

the individual components of PTSD/ASD"; and (2) to the extent Hooge accurately reported his symptoms, "posttraumatic stress does not appear to be a major component" of Hooge's "clinical presentation."[39]  Although Sugerman concluded Hooge did not appear to be exhibiting PTSD symptoms, she also reported the following results: (1) Hooge's reaction in "attention/ concentration processes" was "noticeably slowed"; (2) Hooge exhibited average digital dexterity, but his ability to demonstrate "persistent repetitive movement" was "below average"; (3) the test results "suggest possible subcortical effects characterized by slowed information processing."[40] Based on these findings, Sugerman recommended the FAA should not grant a "Medical Waiver" "until the underlying causative factors are clarified."[41]

The FAA subsequently denied Hooge a medical certificate "due to [his] history of abnormal neuro cognitive testing, which . . . identified possible subcortical effects characterized by slow information processing."[42]  After additional evaluations, the FAA eventually issued the required medical certificate and Hooge resumed flying as a commercial pilot.[43]

## PROCEDURAL HISTORY

On August 16, 2024, Hooge filed a notice of intent and requested a prelitigation review panel hearing with the Utah Division of Occupational and Professional Licensing (DOPL).[44] After the DOPL hearing, Hooge filed a Complaint in the United States District Court, District of

---

[39] *Report* at 17.

[40] *Id.* at 15–16.

[41] *Id.* at 16.

[42] Dkt. 62-7, *Letter from Harriet Lester, M.D., Federal Aviation Administration Regional Flight Surgeon, to Jordan Hooge* (*FAA May 2024 Letter*) at 1; *Defendants' Hooge Deposition* at 205:25–206:21.

[43] *Plaintiff's Hooge Deposition* at 22:14–22.

[44] *Defendants' Motion for Sanctions* at 3; *see generally* Dkt. 76, *Plaintiff's Response to Defendants' Motion for Sanctions* (*Defendants' Motion for Sanctions Opposition*) (not disputing the request for a DOPL hearing).

Nevada on April 1, 2025.[45]  The Complaint asserts four claims: (1) medical malpractice for negligence; (2) fraud by intentional misrepresentation; (3) tortious interference with contractual relations; and (4) defamation.[46]

On May 21, 2025, Defendants filed a motion to dismiss for improper venue.[47]  In their Motion, Defendants argued Hooge is contractually obligated to litigate any claims in the District of Utah pursuant to the forum selection clause in the Aviation Contract.[48]  Defendants requested dismissal or transfer to this District.[49]  Hooge opposed the Motion, arguing the Aviation Contract is void and he is therefore not bound by the forum selection clause.[50]  Subsequently, the deadline to file initial expert disclosures passed and discovery closed on December 17, 2025.[51]

Before the court ruled on Defendants' Motion to Dismiss, Defendants filed their Motion for Sanctions and Motion for Summary Judgment on January 16, 2026.[52]  In their Motion for Summary Judgment, Defendants argue Utah law applies because the Contract's forum selection clause is valid and Hooge has not produced sufficient evidence to prevail on his claims under Utah law.[53]  In the Motion for Sanctions, Defendants allege Hooge improperly disclosed confidential information from the DOPL proceedings which "threatens the integrity" of this case and request

---

[45] *See generally Defendants' Motion for Sanctions*; *Defendants' Motion for Sanctions Opposition*; Dkt. 1, *Complaint*.

[46] *Complaint* ¶¶ 26–54.

[47] Dkt. 15, *Motion to Dismiss for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3)* (*Motion to Dismiss*).

[48] *Id.* at 3–6.

[49] *Id.* at 6.

[50] Dkt. 18, *Plaintiff's Response to Defendants' Motion to Dismiss Based on Forum Selection Clause* (*Motion to Dismiss Opposition*).

[51] *See* Dkt. 55, *Order on Motion to Stay or Extend Discovery* (*Discovery Order*) at 2–3.  The deadline to file expert witness disclosures was September 18, 2025.  *Id.*

[52] *See Docket*.

[53] *See Defendants' Motion for Summary Judgment* at 13–28.

dismissal with prejudice.[54]

On January 16, 2026, Hooge filed his Motion for Summary Judgment.[55]  Hooge argues Nevada law applies and "seeks judgment as a matter of law on Count I (Medical Malpractice)."[56] On February 6, 2026, Hooge filed an Opposition to Defendants' Motion for Summary Judgment.[57] Hooge applies Nevada law in all of his briefing.[58]  In his Opposition, Hooge does not respond to Defendants' Statement of Facts nor include any statement of additional facts.[59]

On March 3, 2026, District of Nevada Judge Andrew P. Gordan issued an order concluding the Contract's forum selection clause is valid and enforceable and transferred the case to this District.[60]  This court issued a Notice of Hearing on the Motions for Summary Judgment on April 16, 2026.[61]  Critically, and notwithstanding that he pled Nevada claims under Nevada law in his Complaint, Hooge never sought leave to amend or replead his claims after Judge Gordon ruled that the case would be transferred to Utah and that Utah law would govern.

On April 28, 2026, Hooge filed a motion for sanctions alleging evidence spoliation and seeking default judgment on liability or, in the alternative, "a mandatory adverse inference together with preclusion of evidence supporting [Sugerman's Report] and any testimony derived

---

[54] *Defendants' Motion for Sanctions* at 3, 8–10.

[55] *Plaintiff's Motion for Summary Judgment*.

[56] *Id.* at 1.

[57] *Defendants' Motion for Summary Judgment Opposition*.

[58] *See Hooge's Motion for Summary Judgment*; Dkt. 66, *Plaintiff's Reply to Defendants' Opposition to Motion for Summary Judgment* (*Hooge's Motion for Summary Judgment Reply*); *Defendants' Motion for Summary Judgment Opposition*.

[59] *See Defendants' Motion for Summary Judgment Opposition*.

[60] *See* Dkt. 68, *Order (1) Transferring Case and (2) Denying Defendants' Motion to Supplement as Moot* (*Transfer Order*) at 3.

[61] Dkt. 80, *Notice of Hearing*.

from it," and attorney's fees and costs.[62]

Neither party sought leave to supplement their Motions after the case was transferred to this District.[63]  The parties' pending Motions are now fully briefed,[64] and the court heard oral argument on July 21, 2026.[65]

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides summary judgment is appropriate when "there is no genuine dispute as to any material fact" such that the moving party is "entitled to judgment as a matter of law."[66]  A fact is material if it affects "the outcome of the suit under the governing law . . . ."[67]  A factual dispute is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[68]

A party asserting undisputed facts must support the asserted facts by: "(A) citing to particular parts of materials in the record;" or (B) showing the cited materials do not establish a genuine dispute or the "adverse party cannot produce admissible evidence to support the fact."[69] Record materials may include "depositions, documents, . . . affidavits or declarations, . . .

---

[62] *Hooge's Motion for Sanctions* at 1–2, 8–10.

[63] *See generally Docket*.

[64] *Defendants' Motion for Summary Judgment*; *Defendants' Motion for Summary Judgment Opposition*; Dkt. 65, *Defendants' Reply in Support of Motion for Summary Judgment* (*Defendants' Motion for Summary Judgment Reply*); *Hooge's Motion for Summary Judgment*; Dkt. 61, *Defendants' Opposition to Plaintiff's Motion for Partial Summary Judgment* (*Hooge's Motion for Summary Judgment Opposition*); *Hooge's Motion for Summary Judgment Reply*; *Defendants' Motion for Sanctions*; *Defendants' Motion for Sanctions Opposition*; Dkt. 83, *Defendants' Reply in Support of Motion for Sanctions* (*Defendants' Motion for Sanctions Reply*); *Hooge's Motion for Sanctions*; Dkt. 84, *Defendants' Opposition to Plaintiff's Motion for Sanctions* (*Hooge's Motion for Sanctions Opposition*).

[65] Dkt. 85, *Minute Entry*.

[66] Fed. R. Civ. P. 56(a).

[67] *Liberty Lobby*, 477 U.S. at 248.

[68] *Id.*

[69] Fed. R. Civ. P. 56(c)(1).

admissions, interrogatory answers, or other materials."[70]  Utah's Local Rules require a motion for summary judgment to include a concise statement of the undisputed material facts and "cite with particularity the evidence . . . that supports each factual assertion."[71]

If a party submits a properly supported motion for summary judgment, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."[72]  In the District of Utah, a party opposing a motion for summary judgment must include a section responding to the moving party's statement of undisputed material facts.[73]  The response must restate the facts it disputes, "providing a concise statement explaining why the fact is disputed" and "cite to the evidence used to refute the fact."[74]  The opposing party may also state additional facts to establish a genuine dispute of material fact and should not "include duplicate copies of evidence already in the record."[75]  If a party fails to support its asserted facts "or fails to properly address another party's assertion of fact as required," the court may give the party the opportunity to address or properly support a fact or "consider the fact undisputed for purposes of the motion."[76]  Either "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[77]

---

[70] *Id.* 56(c)(1)(A).

[71] DUCivR 56-1(b)(3).

[72] *Liberty Lobby, Inc.*, 477 U.S. at 250 (citation and quotation marks omitted).

[73] Fed. R. Civ. P. 56-1(c)(3).

[74] *Id.*

[75] *Id.* 56-1(c)(4).

[76] *Id.* 56(e)(2); *see also Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253–54 (10th Cir. 2017) (concluding the district court did not err in granting summary judgment "based on the failure to respond adequately" to asserted facts); *Musselman v. Keele*, 2024 UT App 143, ¶ 16, 559 P.3d 64 ("When a party fails to dispute a material fact in a motion for summary judgment by failing to respond to the motion, the facts are 'deemed admitted for the purposes of the motion.'" (quoting Utah R. Civ. P. 56(a)(1)(4)).

[77] Fed. R. Civ. P. 56(c)(2).

Summary judgment is also appropriate if a motion is filed after adequate time for discovery and the party who bears the burden of proof at trial fails to make a sufficient showing on an essential element of his or her prima facie case.[78] "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."[79] When considering motions for summary judgment, the court "must construe the facts in a way most favorable to the nonmovant."[80] Cross-motions are treated separately, and the denial of one motion does not requiring the granting of the other.[81]

Sanctions are appropriate when a party's "conduct constitute[es] an abuse of process."[82] Abuse of process is broad and may include disobeying the court's orders,[83] acting in bad faith,[84] and frivolous litigation.[85] The proponent bears the burden of showing sanctions are appropriate.[86]

## ANALYSIS

The Complaint asserts four causes of action: (1) medical malpractice for negligence; (2) fraud by intentional misrepresentation; (3) tortious interference with contractual relations; and (4) defamation.[87] As a preliminary matter, the parties' Motions for Summary Judgment dispute

---

[78] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998); *Doe v. City of Albuquerque*, 667 F.3d 1111, 1122 (10th Cir. 2012).

[79] *Celotex Corp.*, 477 U.S. at 323.

[80] *See Buell Cabinet Co., Inc.v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

[81] *Id.*

[82] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1257 (10th Cir. 2015).

[83] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 57 (1991).

[84] *Farmer*, 791 F.3d at 1257; *see also Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108 (2017).

[85] *See In re Whitaker*, 513 U.S. 1 (1994).

[86] *See Ward v. Nesibo*, No. 4:22-cv-00054-DN-PK, 2023 WL 8261670, at *1 (D. Utah Nov. 29, 2023); *see also Bays Exploration, Inc. v. PenSa, Inc.*, No. CIV-07-0754-D, 2009 WL 10674518, at *6 (D. Colo. May 27, 2009) ("The party seeking sanction bears the burden to prove by a preponderance of the evidence that sanctions are warranted.").

[87] *Complaint* ¶¶ 26–54.

whether Utah or Nevada law applies.[88]  The court first addresses this issue and then turns to the merits and concludes Hooge cannot prevail on his claims.

### I.        Utah Law Applies.

The parties' Motions for Summary Judgment were filed after Defendants' filed their Motion to Dismiss for improper venue and before Judge Gordon issued the Transfer Order.[89] Although the parties' briefs dispute the choice of law,[90] the Transfer Order resolves this issue.

In their Motion to Dismiss, Defendants' improper venue argument was grounded in the Aviation Contract's forum selection clause.[91]  In his Opposition to the Motion to Dismiss, Hooge argued the forum selection clause was "void and unenforceable" due to duress, "overreaching," unconscionability, and waiver.[92]  Judge Gordon considered these arguments and concluded the forum selection clause is valid and enforceable and transferred the case to this District.[93]

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[94]  The doctrine "is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided," and promote judicial economy.[95]  However, the court

---

[88] *Defendants' Motion for Summary Judgment* at 13–18; *Defendants' Motion for Summary Judgment Opposition* at 4–14; *see also* Utah Code § 78B-3-403(18) (defining a malpractice action as "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged injuries relating to or arising out of health care rendered or which should have been rendered by the health care provider").

[89] *See Docket*.

[90] *Defendants' Motion for Summary Judgment* at 13–16; *Defendants' Motion for Summary Judgment Opposition* at 4–6.

[91] *Motion to Dismiss* at 3–6.

[92] *Motion to Dismiss Opposition* at 1, 6–17.

[93] *See generally Transfer Order*.

[94] *McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1034 (10th Cir. 2000) (internal quotation marks and citation omitted).

[95] *Id.* at 1035.

maintains discretion in applying the law of the case doctrine.[96]  The Tenth Circuit has recognized three narrow circumstances that may justify declining to apply the law of the case: (1) "when the evidence in a subsequent trial is substantially different;" (2) "when controlling authority has subsequently made a contrary decision of the law applicable to such issues;" or (3) "when the decision was clearly erroneous and would work a manifest injustice."[97]

Here, because the choice of law issue has already been adjudicated, the law of the case doctrine applies.[98]  Hooge has not filed a motion to supplement his summary judgment briefing and has not argued an exception is appropriate.[99]  The prior ruling on the forum selection clause remains in effect.  The clause mandates that any litigation related to the Aviation Contract "shall be construed and interpreted in accordance" with the laws of the State of Utah.[100]  Accordingly, the court considers the claims and Motions for Summary Judgment under Utah law.

## II.      Claim I: Medical Malpractice (Negligence)

Hooge asserts a claim entitled "Medical Malpractice (Negligence)" that does not state a violation of any particular law.[101]  In Utah, a "malpractice action against a health care provider" is subject to procedural requirements and statute of limitations pursuant to the Utah Health Care Malpractice Act (UHCMA).[102]  The UHCMA governs "any action against a health care provider, whether in contract [or] tort" that is "based upon alleged personal injuries relating to or arising out

---

[96] *Id.* ("The doctrine is, however, only a rule of practice in the courts and not a limit on their power.") (internal quotation marks and citation omitted).

[97] *Id.*  (internal quotation marks and citation omitted).

[98] *See Id.* at 1034.

[99] *See Docket*.

[100] *Aviation Contract* at 4.

[101] *Complaint* ¶¶ 26–34.

[102] *Scott v. Wingate Wilderness Therapy, LLC*, 2021 UT 28, ¶¶ 19, 22, 493 P.3d 592.

of health care rendered or which should have been rendered."[103]

At oral argument, Hooge explained the malpractice claim is a common law negligence claim.[104] However, the Complaint clearly asserts a medical malpractice claim.[105] Hooge conceded he cannot prevail on this claim as pled because it is not a medical malpractice claim under Utah law.[106] Accordingly, the court grants summary judgment to Defendants on Count I.

### III.    Claim II: Fraud (Intentional Misrepresentation)

Hooge alleges Sugerman fraudulently misrepresented to him: (1) the FAA required a neuropsychological evaluation; (2) the FAA referred Hooge to her rather than Owen and omitting "normal" test results and including "unfounded subcortical effects" in her Report; and (3) denying Hooge was a client and "claiming exclusive FAA employment to withhold records."[107]

Under Utah law, an intentional fraudulent misrepresentation claim requires the plaintiff to establish:

> (1) That a representation was made (2) concerning a presently existing material fact (3) which was false and (4) which the representer . . . knew to be false . . . , (5) for the purpose of inducing the other party to act upon it and (6) that the other party, acting reasonably and in ignorance of its falsity, (7) did in fact rely upon it (8) and was thereby induced to act (9) to that party's injury and damage.[108]

A false representation must be a statement "'concerning a presently existing material *fact*'" and "statements 'in the nature of a mere opinion' are generally not actionable."[109]

---

[103] Utah Code § 78B-3-403(18) (defining a "malpractice action against a health care provider").

[104] *Minute Entry*.

[105] *Complaint* ¶¶ 26–34.

[106] *Minute Entry*.

[107] *Complaint* ¶¶ 36–40.

[108] *Musselman*, 2024 UT App 143, ¶ 29 (emphasis omitted) (quoting *Cardon v. Jean Brown Rsch.*, 2014 UT App 35, ¶ 6, 327 P.3d 22).

[109] *England Logistics, Inc. v. Kelle's Transp. Serv., LLC*, 2024 UT App 137, ¶ 46, 559 P.3d 45 (quoting *State v. Apotex Corp.*, 2012 UT 36, ¶ 58, 282 P.3d 66 (emphasis in original), and then quoting *Nielson v. Leamington Mines & Expl.*

Here, Hooge has failed to provide evidence of an essential element of fraud—that Sugerman made a statement regarding a presently-existing material fact.[110] Hooge's Complaint alleges Sugerman falsely stated in her Report that Hooge exhibited "possible subcortical effects characterized by slowed information processing."[111] Hooge maintains the Report caused the FAA to revoke his medical certificate,[112] and all of Hooge's alleged injuries stem from this revocation.[113] But, as Hooge acknowledges, Sugerman's Report is a summary of her opinions based on the neuropsychological evaluation,[114] and opinions are not statements of fact as required for a claim for fraudulent misrepresentation.[115] Because Hooge has failed to present sufficient evidence on a required fraudulent misrepresentation element, the court grants summary judgment to Defendants on this claim.

## IV.    Claim III: Tortious Interference with Contractual Relations

Hooge also asserts a claim for tortious interference with contractual relations. Specifically, Hooge alleges he had an employment contract with the FAA; Sugerman knew medical certification was "essential to his livelihood"; Sugerman "intentionally interfered with [Hooge's] employment by submitting a false and misleading report to the FAA and subsequently withholding records"; Sugerman knew these actions would result in the revocation of his medical

---

*Corp.*, 48 P.2d 439, 442 (Utah 1935)).

[110] *See Celotex Corp.*, 477 U.S. at 322– 323; *see also Otsuka Elecs. (USA, Inc.) v. Imaging Specialists, Inc.*, 937 P.2d 1274, 1281 (Utah Ct. App. 1997) (rejecting a fraud claim for lack of sufficient evidence of causation); *Adler*, 144 F.3d at 670–71; *Doe*, 667 F.3d at 1122.

[111] *Complaint* ¶¶ 16.

[112] *Id.* ¶ 17 ("On May 11, 2024, the FAA revoked Jordan's medical certificate, citing 'abnormal neurocognitive testing' based solely on Dr. Sugerman's report.").

[113] *See id* ¶¶ 22, 27–54.

[114] *Id.* ¶ 16 (stating Sugerman "reversed her opinion" in the Report).

[115] *England Logistics, Inc.*, 2024 UT App 137, ¶ 46; *Nielson*, 48 P.2d at 442 (concluding the plaintiff "failed to sustain the burden resting upon him to prove . . . fraudulent representation of some existing or pre-existing fact" for relying on an opinion).

certificate; and Sugerman's interference directly caused "the termination or suspension of [Hooge's] employment."[116]

To recover damages for tortious interference with contractual relations under Utah law a plaintiff must prove: (1) "the defendant intentionally interfered with the plaintiff's existing or potential economic relations"; (2) "for an improper purpose or by improper means"; (3) "causing injury to the plaintiff."[117]  Additionally, an improper purpose is not sufficient on its own; "no tortious interference claim can succeed without evidence of improper means."[118]  This requires a plaintiff to show the defendant's actions "'are contrary to law, such as violations of statutes, regulations, or recognized common-law rules,' or actions that violate 'an established standard of a trade or profession.'"[119]

Intent is a question of fact generally reserved for trial.[120]  However, Hooge has failed to make a sufficient showing of the remaining elements to submit the claim to a jury.  Hooge has not submitted evidence that Sugerman violated any laws or the standards of her profession by submitting her Report to the FAA.  As Hooge has alleged, Sugerman has a history of "provid[ing] neuropsychological services, including evaluations for FAA medical certifications" and has a "reputation for assisting pilots with FAA and VA issues."[121]  Additionally, Hooge has failed to

---

[116] *Complaint* ¶¶ 45–48.

[117] *Leigh Furniture & Carpet Co. v. Isom*, 657 P.2d 293, 304 (Utah 1982); *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 11, 437 P.3d 343 ("*Leigh* established a three-part test for the tort of intentional interference with economic relations, which includes interference with both existing and prospective contract.").

[118] *Edridge v. Johndrow*, 2015 UT 21, ¶¶ 2–4, 345 P.3d 553; *see also C.R. England*, 2019 UT 8, ¶ 44 ("[A] person is not liable for intentional interference where the person engaged only in conduct in which he or she was legally entitled to engage. . . . [B]y eliminating the improper purpose prong, *Eldridge* furthered our expressed goal of limiting the scope of actionable conduct to that conduct in which the defendant did not have a legally recognized right to engage.").

[119] *C.R. England*, 2019 UT 8, ¶ 42 (quoting *Leigh Furniture & Carper Co. v. Isom*, 657 P.2d 293, 308 (Utah 1982)).

[120] *Koopman v. Water Dist. No. 1 of Johnson Cnty., Kan.*, 972 F.2d 1160, 1165 (10th Cir. 1992) (stating the intent of "contracting parties is normally a question of fact for the jury" (quotation marks and citation omitted)).

[121] *Complaint* ¶¶ 7, 10.

establish Sugerman caused his injuries.[122]  In opposing Defendants' summary judgment motion

Hooge did not dispute the FAA "perform[s] independent review and assessments of raw test data"

and Sugerman does not have the authority to "revoke any airman's medical certificate."[123]  Neither

has Hooge alleged the FAA failed to conduct an independent review.[124]  Accordingly, Hooge has

not identified sufficient facts from which a jury could conclude that Sugerman's Report was the

cause of the revocation.

### V.    Count IV: Defamation (Libel)

To state a defamation claim under Utah law, a plaintiff must allege the defendant: (1)

"published statements that referred to the plaintiff"; (2) "the statements were false and

defamatory"; (3) the statements were published with the requisite degree of fault"; and (4) "the

publication of the statements resulted in damage."[125]  The court conducts "an initial inquiry" to

ensure the alleged statements "are capable of defamatory meaning."[126]  "Whether a statement is

capable of sustaining a defamatory meaning is a question of law . . . ."[127]

In Utah, "a statement is defamatory if it impeaches an individual's honesty, integrity,

virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule."[128]

---

[122] *Supra section III.*

[123] *Defendants' Motion for Summary Judgment* ¶¶ 36–37; *see generally Defendants' Motion for Summary Judgment Opposition* (not disputing *Sugerman Motion for Summary Judgment* ¶¶ 36–37).

[124] *See Defendants' Motion for Summary Judgment Opposition* at 15 (arguing Sugerman's Report caused Hooge's medical revocation because the May 2024 letter constitutes "copy-and-paste causation"); *Hooge Motion for Summary Judgment* at 11 (stating Sugerman submitted the Report to the FAA without review or authorization from Owen, Hooge underwent additional testing, and the FAA subsequently cleared Hooge of any medical concerns).

[125] *Mathews v. McCown*, 2025 UT 34, ¶ 39, 575 P.3d 1114.

[126] *SIRQ, Inc. v. The Layton Companies, Inc.*, 2016 UT 30, ¶ 40, 379 P.3d 1237.

[127] *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994).

[128] *Id.*; *see also* Utah Code § 45-2-2(1) (defining "libel" as "a malicious defamation . . . to impeach the honesty, integrity, virtue or reputation, or publish the natural defects of an individual . . . thereby to expose the individual to public hatred, contempt or ridicule").

"A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff, or even because it makes a false statement about the plaintiff."[129] The statement must have a "tendency to injure his reputation in the eyes of at least a substantial and respectable minority of its audience" and "put[] the person at risk of public hatred, contempt, or ridicule."[130]

Hooge alleges "Defendants published false and defamatory statements in the April 9, 2024 report to the FAA, including allegations of 'subcortical effects' and cognitive impairment, which were unsupported by the testing data."[131] He further alleges "Defendants knew or should have known [the statements] were false," and "[t]he publication of these statements to the FAA damaged [Hooge's] professional reputation, directly contributing to the revocation of his medical certificate."[132]

The defamation claim fails as a matter of law. The contents of the Report are not defamatory under Utah law. The Report does not attack Hooge's honesty, integrity, virtue, or reputation.[133] Neither does Hooge allege who the audience is or provide evidence the Report posed a risk of hatred, contempt, or ridicule. Accordingly, Defendants are entitled to summary judgment on this claim.

## VI.    Leave to Amend

At oral argument, the court addressed Hooge's failing to respond to Defendants' Statement of Facts in his Opposition along with the requirements of Rule 56 and the Local Rules. Hooge acknowledged he had not responded to Defendants' statement of facts in a separate section or filed

---

[129] *Mathews*, 2025 UT 34, ¶ 46 (quoting *West* 872 P.2d at 1009).

[130] *Id.* (quotation marks and citations omitted).

[131] *Complaint* ¶ 51.

[132] *Id.* ¶¶ 52–53.

[133] *See West*, 872 P.2d at 1008.

a motion to amend or supplement his Motion but argued he had responded to the facts throughout his Opposition and the court should not elevate form over substance.[134]  Hooge requested an opportunity to amend his Motion to correct these errors.[135]  Defendants opposed amendment as prejudicial.[136]

Rule 6 of the Federal Rules of Civil Procedure governs motions to amend objections to a motion for summary judgment.[137]  Rule 6 provides the court may permit amendment "if the party failed to act because of excusable neglect."[138]  "The existence of excusable neglect is an equitable inquiry, requiring consideration of all of the relevant factors."[139]  Factors the court considers include: (1) "the danger of prejudice to the adversary"; (2) "the extent of the delay and potential effect on the proceedings"; (3) "the reasons for delay (including whether these reasons are within the movant's 'reasonable control')"; and (4) "the existence of good faith on the part of the movant."[140]  "Untimeliness in itself can be a sufficient reason to deny leave to amend, particularly when the movant provides no adequate explanation for the delay."[141]

Here, the factors do not support amendment.  The case is now in the final stages of litigation and amendment at this late date would prejudice Defendants, not least because rebriefing the Motions and engaging in another oral argument would result in months of delay and

---

[134] *Minute Entry.*

[135] *Id.*

[136] *Id.*

[137] *See Livingston v. Univ. of Kan. Hosp. Auth.*, 844 Fed. App'x 82, 84 (10th Cir. 2021) (stating a motion to amend an objection to a motion for summary judgment is properly considered under Rule 6).

[138] Fed. R. Civ. P. 6(b)(1)(B).

[139] *Livingston*, 844 Fed. App'x at 84.

[140] *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

[141] *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1495 (10th Cir. 1995).

significant additional costs.[142]  The court acknowledges the transfer to this District was not in Hooge's control.  However, more than four months have passed since the transfer and three months since the court noticed a hearing on the Motions.[143]  The court does not impute bad faith, but even Hooge's counsel acknowledged he had no justifiable reason for failing to move to amend earlier.[144]  This is especially striking since a large portion of his briefs apply Nevada law instead of Utah law.  Because Hooge has not demonstrated excusable neglect and because rebriefing at this late stage would be unduly prejudicial to Defendants, the court denies the oral request to amend.

**CONCLUSION**

For the reasons stated above, the court concludes Defendants are entitled to summary judgment because Hooge has "failed to make a sufficient showing on . . . essential element[s]" of his claims.[145]  Accordingly the court GRANTS Defendants' Motion for Summary Judgment[146] and DENIES Hooge's Motion for Summary Judgment.[147]  The court also DENIES as moot Defendants' Motion for Sanctions[148] and Hooge's Motion for Sanctions.[149]  The Clerk of Court is directed to close the case.

---

[142] *See McNees v. Ocwen Loan Servicing, LLC*, No. 16-cv-01055-WJM-KLM, 2019 WL 13199890, at *3 (D. Colo. Oct. 10, 2019) (concluding the defendants would be prejudiced by having to respond to untimely discovery requests and by expending the additional time and cost required for such responses).

[143] *See Transfer Order*; *Notice of Hearing*; *Minute Entry*.

[144] *Minute Entry*.

[145] *Celotex Corp.*, 477 U.S. at 323.

[146] Dkt. 58.

[147] Dkt. 59

[148] Dkt. 57.

[149] Dkt. 82.

SO ORDERED this 4th day of August 2026.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge